**In re SIESTA SANDS DEVELOPMENT CORPORATION, Debtor.**

**Bankruptcy No. 84–17.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 8, 1988.

See also, Bkrtcy., 73 B.R. 41.

Joel Truehaft, Tampa, Fla., for debtor.

M. Jay Lancer, Lancer & Vandroff, P.A., Sarasota, Fla., pro se.

**ORDER ON APPLICATION FOR AL-LOWANCE OF ATTORNEYS' FEES**

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a confirmed Chapter 11 case and the matter under consideration is an Appli-

cation for Allowance of Attorneys' Fees filed by the law firm of Lancer & Vandroff, P.A., the former counsel of record for Siesta Sands Development Corporation (Debtor). Ordinarily such an Application would not require any detailed discussion but due to the unusual background of this entire Chapter 11 case, it appears to be appropriate to briefly state the facts germane and relevant, as appear from the record, which are as follows:

On January 6, 1984, Roland and Yvette Corneau and Tichenor & Lindner Architects, Inc., filed an involuntary petition for relief under Chapter 11 of the Bankruptcy Code against the Debtor. On January 31, 1984, the Debtor filed an Answer and a Motion to Convert the involuntary case under Chapter 11 to a voluntary case, and on February 6, 1984, this Court entered an Order for relief. It should be noted at this point that Roland V. Corneau was the majority stockholder of the Debtor and was the president and member of the Board of Directors of the Debtor.

By Order entered on June 26, 1984, M. Jay Lancer, Esquire was authorized by this Court to represent the Debtor-in-Possession. As noted, the principals of the Debtor are Mr. and Mrs. Corneau who have been acting during the entire Chapter 11 case as the responsible officers of the Debtor corporation.

The record reveals that the one and only asset of this Debtor was an uncompleted resort complex originally designed to be a time share facility located at Siesta Sands in Sarasota County. The project was encumbered by several short term mortgages. The holder of the first mortgage was Barnett Bank of S.W. Florida, N.A. (Barnett). Kalin Financial Corporation (Kalin), who commenced the foreclosure action in the 12th Judicial Circuit of the State of Florida in Sarasota, held a second mortgage, and Roland V. Corneau and his wife Yvette, the officers of the Debtor held a third mortgage. On October 28, 1983, Kalin obtained a final judgment of foreclosure and the Corneaus also sought to foreclose their mortgage.

The first plan of reorganization and disclosure statement was filed by the Debtor on December 26, 1984. This plan of reorganization did not provide any specific treatment of secured creditors. Subsequently, Barnett filed a Motion to Dismiss the Chapter 11 case which was considered in due course. On August 27, 1984, this Court entered an Order and continued the hearing on Motion to Dismiss to be considered together with the Debtor's plan of reorganization which was scheduled for confirmation on November 6, 1984. However, the confirmation hearing was not held and was continued several times because of the apparent inability of the Debtor to proceed to confirmation. The confirmation hearing was ultimately held on the original plan in May, and on May 21, 1985, this Court entered an Order denying confirmation of the original plan and granting leave to file an amended plan and disclosure statement within 30 days of the date of the entry of the Order. The first amended plan of reorganization provided for the full payment of all secured creditors although, again, failed to specify who the secured creditors were.

On August 9, 1985, this Court approved the amended disclosure statement and scheduled a confirmation hearing for October 21, 1985. The same order also fixed the bar date to file fee applications on or before October 18, 1985. In light of the Debtor's inability to proceed to confirmation of the first amended plan, the confirmation hearing was rescheduled again for January 27, 1986. On February 24, 1986, Mr. Lancer, on behalf of the Debtor, filed a Motion to sell the resort complex free and clear of any or all liens to Roland and Yvette Corneau. Even though Mr. Lancer knew from the very beginning that Kalin not only had a mortgage on the subject property but actually filed a foreclosure action and obtained a final judgment of foreclosure, the Motion was not served on counsel for Kalin, Alexander Paderewski, who, parenthetically, is the cousin of Mr. Lancer, but only on attorneys who represented the various and sundry creditors who claimed a secured interest in the subject property. The Motion, as noted,

sought an Order from this Court authorizing it to sell the property free and clear of all liens including the lien of Kalin Enterprises, Inc., (sic). It should be noted that the proper corporate name of the holder of the second mortgage is Kalin Financial Corporation. On June 12, 1985, this Court rescheduled a hearing to consider the approval of the amended disclosure statement and on September 6, 1985, this Court entered an Order and approved the amended disclosure statement as supplemented by the Debtor.

On June 18, 1986, this Court entered an Order and confirmed the amended plan of reorganization of the Debtor and by an Order entered June 2, 1986, authorized the Debtor to sell the single asset of the Debtor, the resort complex, free and clear of all liens which, according to the Debtor, were several. The Order submitted by Mr. Lancer did not mention the mortgage lien of Kalin who, not having received notice, did not appear at the hearing which was scheduled to consider the Debtor's Motion to sell the property. It is to be noted that although the bar date to file fee applications long expired no fee application was filed by M. Jay Lancer, prior to the confirmation of the Debtor's Plan of Reorganization.

On July 9, 1986, all creditors who were listed by the Debtor on the original matrix, which included Kalin, filed with the Court received a notice of the entry of the order confirming the amended plan of the Debtor. On September 4, 1986, the original Order authorizing the sale was amended, but counsel for Kalin was not served with a copy of this amended Order. It appears that notwithstanding the foregoing the Debtor and Kalin entered into a stipulation and agreed that Kalin will receive $178,883.56 plus interest accruing at the rate of $71.91 per day from October 31, 1984, in satisfaction of its mortgage lien.

On October 3, 1986, Kalin filed a Motion to set aside and vacate the orders authorizing the sale of the subject property. The Motion of Kalin was based on the proposition that the Debtor fraudulently represented to the court that the Debtor had substantial equity in the property and that the proceeds of the sale were more than sufficient to satisfy all liens and encumbrances in full. Kalin further contended that it did not receive a copy of the changes set forth in the amended plan of reorganization, nor did it receive a notice of the hearing at which time the Court considered the Debtor's Motion to sell, or the notice of hearing on confirmation. Needless to say, it did not receive any payment near the original amount of its judgment nor in the stipulated amount agreed by the Debtor.

On November 3, 1986, the Debtor filed an application to employ Ms. Isaak and on the same date M. Jay Lancer filed his motion to withdraw as counsel of record for the Debtor. The apparent failure of Mr. Lancer to properly deal with the Kalin mortgage spawned innumerable post-confirmation proceedings, instituted not only by Kalin but also by Caribank Mortgage Corporation (Caribank) who in reliance on the Order of confirmation and Order of sale free and clear of liens, granted a 3.1 million dollar line of credit to Corneau Development Corporation, the corporation formed to develop the resort complex, and to Mr. and Mrs. Corneau who were the purchasers of the subject property. As part of this transaction, Caribank received a mortgage securing an indebtedness represented by two notes, one in the principal amount of 3.1 million and another in the amount of $75,000.00. The record further reveals that on December 5, 1986, the Debtor withdrew its application to employ Ms. Isaak and filed an application to employ Mr. A. Dennis Pelaez who was authorized to be employed by an Order entered on December 11, 1986.

The seemingly endless ongoing dispute between the Debtor and Kalin was ultimately resolved by a joint stipulation between the Debtor; Siesta Sands Resort Owners' Association, Inc. ("Owners' Association"); Kalin Financial, Inc., and Kalin Enterprises, Inc. (collectively "Kalin"); Caribank Mortgage Corp. ("Caribank"); Corneau Development Corporation ("Corneau Development") 1 Roland Corneau and Yvette Corneau (collectively the "Corneaus"); and H & J Associates ("H & J").

The Order approving the stipulation directed the clerk to send a copy of the court order to all creditors and other parties of interest. The order also fixed February 26, 1987, to interpose any objection to the stipulation and to the order approving same. On January 20, 1987, prior to execution of the joint stipulation and long after the time fixed to file fee applications, October 18, 1985, the law firm of Lancer & Vandroff, P.A., filed an application for allowance of attorneys' fees although the attorney retained initially by this Debtor was M. Jay Lancer individually, and not the law firm. According to the law firm, the reasonable compensation for its services is $107,768.00. It also sought a cost reimbursement in the amount of $3,500.00.

On February 20, 1987, attorneys for M. Jay Lancer and Lancer & Vandroff, P.A., filed a pleading entitled "Objection to a Limited Portion of the Joint Stipulation and Order Approving Joint Stipulation in Agreement and Settlement of Controversy". On March 19, 1987, this Court entered an Order and scheduled a pretrial conference consider the issues raised by the various motions all relating to the objection to the approval of the joint stipulation and relating to the fee application of the lawfirm of Lancer & Vandroff. The objection to the joint stipulation was in fact addressed only to that portion of the joint stipulation which authorized the transfer of all assets including time share contracts of the Debtor and which in turn effectively divested the Debtor of all its assets and left no monies to pay administrative claims particularly, of course, the administrative claim of Mr. Lancer which, as noted, was filed by the law firm of Lancer & Vandroff, P.A.

Mr. Lancer having realized that his fee application was untimely, that is, it was not filed prior to the expiration of the bar date, filed a Motion for Extention of the Bar Date. The fee application filed by Lancer & Vandroff was violently opposed by the Debtor on the following grounds: First, according to the Debtor no fee should be allowed to Mr. Lancer and all fees should be forfeited because of the alleged conflict of Mr. Lancer while he was representing the Debtor and also allegedly representing Kalin; second that the fee application is time barred inasmuch as it was not filed before the bar date fixed by the Court. Lastly, so contends the Debtor, the fee should be forfeited on the additional grounds of the poor quality of the service rendered to the Debtor by Mr. Lancer.

▮ Concerning first the challenge of the Debtor based on untimeliness, this Court is satisfied and has ruled that the bar date fixed by the court was not a firm fixed date, and could be extended for cause upon proper showing. Having considered this entire record, this Court is satisfied that Mr. Lancer was in fact lulled into false security through the repeated promises by Mr. and Mrs. Corneau that he would be paid for his services and in reliance on these promises he did not file a fee application. This reliance was based obviously on the proposition that fees which were to be paid by Mr. and Mrs. Corneau directly would not be subject to scrutiny of the Court. While this proposition, if that was the basis for his failure to file a timely fee application, may not be commendable, nevertheless this Court is satisfied that Mr. Lancer reasonably relied on these promises made by the Corneaus who should not be permitted to urge untimeliness of the fee application as a basis for the denial of same. In sum, this court is satisfied that the challenge on the fee application for untimeliness is without merit.

▮ Next, it could be not gainsaid that a conflict by an attorney representing a Debtor-In-Possession, would clearly warrant a total forfeiture of all fees. *H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 328 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 38 (1978)*, U.S.Code Cong. & Admin. News 1978, p. 5787; *In the Matter of Arlan's Department Stores, Inc.*, 615 F.2d 925 (2d Cir.1979).

▮ However, this Court is satisfied that there is nothing in this record which would support the finding that Mr. Lancer in fact had a conflict while he represented the Debtor. His alleged conflict is based on the notion that Mr. Lancer was socially

acquainted with the principal of Kalin; that they had numerous conversations concerning the projects; that Kalin was represented by Mr. Lancer's cousin. These facts, while they are not disputed, are totally insufficient to establish a conflict of interest especially in light of the fact that there is nothing in this record to permit a finding that Mr. Lancer ever, or at least not during the relevant time, represented Kalin, that is at the same time that he represented the Debtor. Having concluded that the previous two challenges are without basis this leaves for consideration what fee, if any, should be allowed in this case to Mr. Lancer.

■ The resolution of this issue is not without difficulty for several reasons. First, the record is clear that as noted earlier the attorney who was authorized to be employed by the Debtor was M. Jay Lancer and not the law firm of Lancer & Vandroff, and this record is devoid of any evidence that this Debtor was authorized to employ the law firm of Lancer & Vandroff, P.A. The vast majority of the hours billed as stated in the fee application relate to services rendered not by Mr. Lancer individually, but by an associate of the law firm and by a senior partner of the law firm although the schedules submitted with the application are again unclear as to who conducted the innumerable telephone conferences which, as stated in the application, are part of the services for which compensation is sought.

The second difficulty is based on the fact that Mr. Lancer's failure to adequately deal with the Kalin problem produced a large amount of totally unnecessary and extensive litigation post confirmation causing a substantial delay and cost to the Debtor. Mr. Lancer was aware from day one that Kalin had a mortgage lien on the subject property and was fully aware that Kalin not only actually filed a foreclosure action against the subject property but also obtained a final judgment and scheduled a final foreclosure sale which was only stopped by the involuntary petition filed against the Debtor.

It is not without basis to surmise that the reason Mr. Lancer did not properly treat the Kalin claim was based on the assumption by him, which turned out to be incorrect, that a sale of the property would produce sufficient funds to pay the secured claim as required by the stipulation of Kalin in full. Be that as it may, it is clear that the amended plan of reorganization submitted by Mr. Lancer was improper and the lack of proper treatment of Kalin caused serious complications particularly due to the fact that in reliance on the Order of Confirmation Caribank made substantial advances to the Corneaus on the loan commitment under the assumption that its mortgage would be a senior encumbrance on the subject property. This assumption was more than reasonable in light of the provisions of the Order which approved the sale of the subject property free and clear of all liens and encumbrances.

■ As noted earlier the law firm of Lancer & Vandroff seeks an allowance of $107,768 and the reimbursement of costs in the amount of $3,500.00. Having considered the record and the quality and extent of the services rendered by Mr. Lancer this Court is constrained to conclude that in this situation it is appropriate to drastically reduce the fee request which in this Court's judgment should not be more than $50,-000.00. Regarding the request for reimbursement of costs for long distance telephone calls, postage and photocopying, Lancer & Vandroff, P.A., has failed to provide the Court with an itemized breakdown of costs incurred. Even if a breakdown had been submitted, this Court is satisfied that these are merely overhead expenses.

One final comment, while it is true that the fee application was made by the law firm who was technically not authorized to be employed by the Debtor, the Court is satisfied that the application should be treated as that of Mr. Lancer and not the law firm and the allowance made is to Mr. Lancer.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Application for Allowance of Attorneys' Fees be, and the same is

hereby, granted in the reduced amount of $50,000.00 for fees and $0.00 for costs. It is further

ORDERED, ADJUDGED AND DECREED that the Objection to the Application be, and the same is hereby, sustained in part and overruled in part. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor be, and the same is hereby, ordered to pay to Lancer & Vandroff, P.A., the total sum of $50,000.00 within 45 days of the date of this Order. It is further

ORDERED, ADJUDGED AND DECREED that in the event the Debtor fails to pay Lancer & Vandroff, P.A., within 45 days of the date of this Order, a hearing will be set to consider whether to vacate the Order of Confirmation and dismissal or conversion of this case for the Debtor's failure to pay this cost of administration.